STATE OF NEBRASKA, APPELLEE, v. JOHN W. JOSEPH JR., APPELLANT.

274 N. W. 2d 880

Filed January 30, 1979. No. 42178.

J. Joseph McQuillan, for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle, for appellee.

Heard before KRIVOSHA, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

The defendant was found guilty of robbery, unlawful use of a firearm in the commission of a felony, and shooting with intent to kill, wound, or maim. He was sentenced to imprisonment on count I for 13 to 20 years, on count II for 3 to 5 years, and on count

III for 13 to 20 years. The sentences on counts I and III run concurrently. The sentence on count II runs consecutively to the other sentences.

The defendant has appealed to this court and his assignments of error relate to the sufficiency of the evidence, a polygraph examination consented to by the defendant, and the identification evidence.

The robbery occurred at a service station at 58th and Redick Streets in Omaha, Nebraska, at about 12:15 a.m., on October 16, 1977. The attendant at the station at the time of the robbery was Linda Larson. The defendant and a companion, Terri Cranon, entered the station office, ostensibly to use the telephone. The defendant, who was carrying a sawed-off shotgun, stationed himself in the back room. When the attendant entered the station office the defendant came out of the back room, pointed the gun at the attendant's head, and demanded the money. The attendant gave the defendant all the money she had. The defendant then demanded that the attendant open the safe while he counted to three. When the attendant was unable to open the safe by the count of three the defendant shot the attendant in the head, the shot entering her right eye and passing through the side of her head.

As the defendant and his companion were leaving the station office a customer, Maxine Gosier, and a companion were walking toward the station office. The defendant told Maxine there was no one in the office. Maxine entered the office and found the attendant lying on the floor.

During the police investigation following the robbery, the police showed a number of photographs to both the attendant and Maxine. Both the attendant and Maxine observed lineups on December 7, 1977, which included the defendant.

During the investigation of the robbery the defendant was arrested and questioned by the police and asked to take a polygraph examination. At the

hearing on his motion to dismiss the defendant testified in response to a leading question that the police had said they would let him go if he "passed" the test. The test was administered and the examiner concluded the defendant had answered the questions truthfully. The defendant was then discharged from custody. Later a complaint was filed charging the defendant with the crime and this prosecution followed.

The defendant contends it was a violation of due process to charge him with the crime after he had consented to a polygraph examination upon a representation that he would be discharged if he passed the test and he had passed the test successfully. The only evidence that the defendant would be discharged was the testimony of the defendant. The evidence of the State was that the police do not decide whether a defendant will be charged, but that the results of the test are forwarded to the county attorney who then determines whether charges will be filed.

An agreement that charges will be dropped if an accused person passes a polygraph test is not binding unless it has been approved by the trial court. State v. Sanchell, 191 Neb. 505, 216 N. W. 2d 504. The evidence of the State is that the police advised the defendant that the determination as to whether charges would be filed would be made by the county attorney. There is no claim the county attorney made any representation to the defendant as to whether charges would be dropped or that the trial court had approved such an agreement. Under these circumstances we find no error in the order of the trial court overruling the defendant's motion to dismiss.

During the investigation of the robbery the police showed a number of photographs to the attendant in an effort to identify the person who had committed the robbery. The attendant was unable to identify

any of the photographs as being a photograph of the robber although one photograph looked similar. At a lineup consisting of three persons on December 7, 1977, the attendant identified the defendant as the robber but stated she could not be positive. At the trial the attendant made a positive identification of the defendant.

Maxine Gosier, the witness who saw the defendant and his companion leave the station, was unable to identify the defendant from photographs shown to her by the police. At a two-person lineup on December 7, 1977, she stated that the defendant "did look a lot like the man that I saw;" but she was not sure that he was the same man. At the trial she made a positive identification of the defendant based upon her recollection of how he appeared at the scene of the robbery.

The defendant contends his motions to suppress the identification testimony of the attendant and Maxine Gosier should have been sustained because the lineups were conducted in a manner which was so unnecessarily suggestive and conducive to irreparable mistaken identification as to amount to a denial of due process of law. The determination as to whether the identification procedures were unnecessarily suggestive and conducive to a substanttial likelihood of irreparable mistaken identification is to be made by a consideration of the totality of the circumstances surrounding the procedures.

On both occasions the police stated they had a suspect in custody. This does not destroy the reliability of the lineup because it is implicit in a lineup that one or more of the persons being shown to the witness is a person whom the police believe may have committed the offense. See State v. Bolden, 196 Neb. 388, 243 N. W. 2d 162.

The lineup which was viewed by Maxine Gosier consisted of only two persons. Although the persons at both lineups were black and of similar height and

weight, one person wore a turban or a similar covering over his hair. This was unfortunate because hair was one of the features upon which the witnesses based their identification. However, upon a consideration of the totality of the circumstances we find no error in the ruling of the trial court that the identification procedures were not unnecessarily suggestive and conducive to a mistaken identification.

There is an additional fact in this case which tends to minimize the importance of the identification testimony of the attendant and Maxine Gosier. The defendant's companion at the time of the robbery, Terri Cranon, testified as a witness for the State under a grant of immunity. She testified in detail as to the planning of the robbery, what happened at the service station, and what she and the defendant did after they left the station. Her testimony, if believed, is conclusive as to the guilt of the defendant.

The evidence was clearly sufficient to sustain a finding of guilt beyond a reasonable doubt. The judgment of the District Court is affirmed.

AFFIRMED.

WHITE, J., concurs in result.