State of Nebraska, appellee, v. Robert L. Harris,
appellant.

290 N. W. 2d 645

Filed April 1, 1980. No. 42713.

W. Patrick Betterman and McGill, Koley, Parsonage & Lanphier, P.C., for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Heard before Krivosha, C. J., Boslaugh, McCown, Clinton, Brodkey, White, and Hastings, JJ.

Krivosha, C. J.

The appellant, Robert L. Harris (Harris), was charged in a two-count information. The first count charged that, on or about the 9th day of September

1978, Harris, in the County of Douglas and State of Nebraska, did forcibly and by violence or by putting in fear, take from the personal protection of Jordan Schwening (Schwening) personal property of value, the property of Husky Service Station, with intent to rob or steal. The second count charged that Harris did, at the same time, unlawfully use a firearm in the commission of a felony. To both of these charges a plea of not guilty was entered on behalf of Harris by the court. Thereafter, the case was tried to a jury which returned a verdict of guilty on each count. The trial court accepted the jury's verdict of guilty as to both counts and sentenced Harris to imprisonment at hard labor in the Nebraska Penal and Correctional Complex for an undetermined period of not less than 4 years nor more than 6 years on count I and imprisonment at hard labor for a period of 3 years on count II, said sentences to be served consecutively.

Harris has appealed from that conviction and sentence, maintaining that the trial court committed three errors. The errors assigned are: (1) That the court erred in not sustaining Harris' motion in limine to prohibit the prosecution from arguing in closing argument that an adverse inference against Harris could be drawn from Harris' failure to call a particular corroborating witness; (2) that the trial court erred in refusing to permit Harris to interrogate a prosecution witness as to whether he was wanted for first degree murder in Alabama; and (3) that the trial court erred in not sustaining Harris' motions to suppress both the pretrial lineup identification of Harris by Schwening and one Scott Corder (Corder) and the in-court identification of Harris by Schwening and Corder.

Our examination of the record compels us to reach the conclusion that the assignments of error are without merit and that the judgments and sentences should be affirmed.

On the evening of September 9, 1978, Schwening was working alone at the Husky Service Station located at 65th and Ames Streets in Omaha, Nebraska. At about 10 p.m., a male appeared at the station saying he was having trouble with his car which was parked several blocks away. The male was later identified by several witnesses, including an admitted accomplice, as being Harris. Harris remained in the station for about an hour, during which time he made a telephone call, visited with Schwening, and generally stood around the station.

After Harris had been in the station for approximately 15 or 20 minutes, a second party appeared who was later identified by his own admission as James Wiggins (Wiggins), the accomplice. Wiggins indicated to Schwening that he was waiting for his girl friend to pick him up and remained in the vicinity of the station.

Shortly before 11 p.m., Harris purchased a package of cigarettes and asked Schwening for some change. As Schwening was in the process of making the change, Wiggins returned to the station, pointed a sawed-off shotgun at Schwening, and proceeded to take the cash representing the station's receipts for the evening that Schwening had been carrying in his left front pocket. Harris then searched Schwening and, finding nothing further, reached into the cash drawer and took the loose change kept there.

Harris then placed Schwening in the station's restroom, closed the door, and ordered him to remain there for a while. Harris and Wiggins then left and, after a few minutes, Schwening left the restroom and called the police.

Approximately 2 weeks after the robbery, on September 24, 1978, Schwening was asked by the Omaha police department to look at some mug shots and to view a lineup of eight photographs. Included among the eight photographs was a picture of Harris taken some time earlier while Harris was in the Navy.

Schwening was unable to identify Harris from the photo lineup. An examination of the photos, however, easily discloses that Harris' appearance at the time of the robbery was substantially different from that reflected by the earlier Navy photograph. In the Navy photograph, Harris is wearing a Navy hat. Also, Harris appears clean-shaven. At the time of the robbery, Harris had a mustache and goatee and appeared somewhat older.

On January 4, 1979, Harris was arrested for the robbery and Schwening was asked to come to Omaha police headquarters to view a lineup. The police indicated to Schwening when they asked him to come to the station that they wanted him to view some individuals because they thought they had caught the robber. Schwening identified Harris as the robber during the lineup.

Another pretrial lineup was conducted on February 14, 1979, at which time Corder was asked to view four individuals, including Harris. Corder had been a parking attendant at an Omaha restaurant located immediately adjacent to the filling station. He testified later at trial that he had talked to Harris during the evening, though admittedly there was some confusion as to the exact time. Corder identified Harris as the man he had spoken to in the restaurant parking lot on the night of the robbery.

Trial was commenced in the District Court for Douglas County, Nebraska. During the course of the trial, both Schwening and Corder positively identified Harris as the man involved in the holdup. The prosecution also offered both Schwening's and Corder's pretrial identification of Harris as corroboration of their in-court identification.

Wiggins likewise testified that he and Harris together committed the robbery in question. Prior to Wiggins' testimony, the State filed a motion in limine to direct defense counsel not to attempt to offer evidence that Wiggins was wanted for first de-

gree murder in Alabama. The State's motion in limine was sustained over defense counsel's contention that such evidence was relevant to show Wiggins' bias and interest in the outcome of the Harris trial.

On direct examination, Wiggins testified that he had met Harris for the first time 3 or 4 days prior to the robbery. Wiggins stated that a Paul Sanders or Paul Saunders (Saunders) had introduced him to Harris on that occasion. Harris, on the other hand, testified that he had not met Paul Saunders until several days after the Husky robbery and therefore could not have met Wiggins before the robbery. Neither side called Saunders to testify nor did either side offer any evidence as to whether Saunders was unavailable to testify. Harris' defense was based upon the claim that he was ill and in bed on the date of the robbery.

Immediately before closing argument, outside of the jury's presence, defense counsel moved the court by a motion in limine to direct the prosecution not to argue that an adverse inference against Harris be drawn because he failed to call Saunders. The trial court denied the motion.

At this point, events at the trial become unclear due to the fact that no record was made of what occurred during closing arguments. Defense counsel maintains that, in the closing argument to the jury, the prosecution argued that the jury might draw an adverse inference against Harris because he did not call Saunders as a corroborative witness. Unfortunately, however, the closing argument was not recorded nor was a record made of the facts immediately following the closing argument and after the jury was dismissed. It was not until defense counsel filed his motion for new trial that the matter was raised in its present form. During the motion for new trial, defense counsel attempted to obtain the prosecution's agreement as to what in fact was said

during the closing arguments by both parties. Defense counsel was unsuccessful in obtaining such an agreement as to what was said by the prosecution.

The summary by the parties at the motion for new trial would indicate that the prosecuting attorney made no argument concerning Saunders' absence during the opening portion of his closing argument. Defense counsel then, during his portion of the closing argument, argued that the jury should decide the case on the record only. As an example, he said, it would be improper for the jury to draw an inference adverse to the State for the State's failure to call Saunders to impeach or discredit the testimony of Harris even though the State had the burden of proof, because there was no foundation in the record to establish whether Saunders was available. It was because of defense counsel's suggestion to the jury that no inference should be drawn from the failure to call Harris that the prosecutor made comment. We are unable, however, to determine what the comment was. The most we have is defense counsel's assertion that "the Prosecutor then raised the argument that an adverse inference be drawn to Mr. Harris that Mr. Sanders was not called." That statement, standing alone, hardly tells us what in fact was said or the context in which it was said. Further, the prosecutor does not admit to defense counsel's characterization of what the prosecutor said. As already noted, however, none of this is found in the record and comes about only by reason of the parties' attempting to recollect what was said. The trial court overruled the motion for new trial.

With that background, we then turn to Harris' first assignment of error. While Harris frames the assignment in terms of the trial court's error in not sustaining Harris' motion in limine, in fact he argues that it was error for the prosecution in the closing portion of its final argument to make reference to Saunders' absence even though defense

counsel was the one to first mention that fact in his closing argument. The record before us, such as it is, does not indicate that there was any prejudice to Harris by reason of the court overruling Harris' initial motion in limine. Not all action by a trial court, even if erroneous, justifies a new trial. If the error is harmless, it will afford the defendant no relief. See Chapman v. California, 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 705 (1967). Even if the trial court should have sustained the motion, a fact we do not now decide, it would not entitle Harris to a new trial. The overruling of the motion did not cause Harris any harm. The prosecution made no comment in his opening portion of the closing argument. The situation, following the State's opening portion of its closing argument, was no different than it would have been had the motion been sustained.

The difficulty arises by reason of the fact that Harris, apparently fearing that the prosecution might yet say something, took it upon himself to introduce to the jury the matter of Saunders' absence in his closing argument.

Whether a prosecutor should be permitted to make comment about a defendant's failure to call a witness in a criminal case is an open question. This court has said in the past that, in an appropriate case, it is proper for counsel to comment on the failure of the opposing side to produce a witness. State v. Heiser, 183 Neb. 665, 163 N. W. 2d 582 (1968). In an extensive law review article entitled Drawing an Inference From the Failure to Produce a Knowledgeable Witness: Evidentiary and Constitutional Considerations, 61 Cal. L. Rev. 1422 (1973), the counterarguments and cases are raised. Perhaps in a case with an appropriate record, we may again address that issue. Unfortunately, this is not that case.

The fact of the matter is that we do not have a record before us which would in any way indicate to us what it was that Harris' counsel said or what the

prosecution said in closing. Where it is claimed that an attorney is guilty of misconduct in arguing a case to a jury and it is desired to raise a question on that point for a decision of the Supreme Court, it is necessary that objection be made to the trial court at the time and an adverse ruling had thereon and that the same be made a part of the record by a proper bill of exceptions. Johnson v. Nebraska Public Power Dist., 187 Neb. 421, 191 N. W. 2d 594 (1971); Pieper v. City of Scottsbluff, 176 Neb. 561, 126 N. W. 2d 865 (1964); Sandomierski v. Fixemer, 163 Neb. 716, 81 N. W. 2d 142 (1957). Much of the difficulty with which we are presently confronted would have been easily eliminated had counsel, at the conclusion of the closing arguments, asked for the court reporter and made an offer of proof. Having failed to do that, we are totally at a loss to know what in fact took place. We are unable to review the alleged error with the record in the state it is in. It is the law in Nebraska that, where allegedly prejudicial remarks of counsel do not appear in the bill of exceptions, this court is precluded from considering an assigned error concerning such remarks. State v. Spurgeon, 200 Neb. 719, 265 N. W. 2d 224 (1978); State v. Costello, 199 Neb. 43, 256 N. W. 2d 97 (1977); State v. Godinez, 190 Neb. 1, 205 N. W. 2d 644 (1973). We have likewise held that an assignment of error requiring an examination of evidence cannot prevail on appeal in the absence of a proper bill of exceptions. State v. Pope, 192 Neb. 755, 224 N. W. 2d 521 (1974); State v. Kortum, 176 Neb. 108, 125 N. W. 2d 196 (1963). This record does not permit us to consider the assignment of error and it must be overruled.

We therefore turn to Harris' second assignment of error. Harris concedes that the fact Wiggins was wanted in Alabama for first degree murder does not constitute impeachment evidence contemplated by section 27-609, R. R. S. 1943. Nevertheless, Harris argues that such evidence should have been ad-

mitted for the purpose of impeaching his credibility on the basis of bias and interest in the outcome of these proceedings. Harris urges that such evidence was admissible to show that Wiggins was testifying in hope of being rewarded by the Alabama authorities. There is no evidence to support that claim. The record does not in any manner indicate that any promises had been made to Wiggins by anyone in return for his testimony. The evidence that Wiggins was wanted in another state for an alleged crime was not admissible under any theory and the court's refusal to permit such evidence to be introduced was entirely correct. Harris' second assignment of error is without merit.

We therefore turn to Harris' last assignment of error. In reviewing this assignment of error, we must keep in mind the standard by which such review is conducted. We have frequently held that where the evidence is conflicting regarding a motion for the suppression of evidence, the decision upon the motion is for the trial court and its decision will not be reversed on appeal in the absence of a showing of an abuse of discretion. State v. Weinacht, 203 Neb. 124, 277 N. W. 2d 567 (1979); State v. Batchelor, 191 Neb. 148, 214 N. W. 2d 276 (1974); State v. Harig, 192 Neb. 49, 218 N. W. 2d 884 (1974).

We have reviewed the entire record, both with regard to the pretrial lineup and the in-court identification, and we are unable to see how it can be said that the trial court's rulings constituted an abuse of discretion.

The determination as to whether the identification procedures were unnecessarily suggestive and conducive to a substantial likelihood of irreparably mistaken identification is to be made by a consideration of the totality of the circumstances surrounding the procedures. State v. Joseph, 202 Neb. 268, 274 N. W. 2d 880 (1979). When one considers the totality of the circumstances surrounding the procedures in this

case, one is compelled to conclude that the trial court did not abuse its discretion in allowing the evidence to be considered by the jury.

For all of these reasons, therefore, the assignments of error advanced by the appellant are without merit and the judgment in each count is affirmed.

AFFIRMED.

CLINTON, J., not voting.